Fireman's Fund Indemnity Company, a Corporation, and Gail Saraniecki, Plaintiffs-Appellees, v. The Freeport Insurance Company, a Corporation, Defendant-Appellant, and Francis Syoen and Fiore Angelico, Defendants.

Gen. No. 48,142.

First District, First Division.

March 20, 1961.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (A. R. Peterson, Harold W. Huff and John W. Gilligan, of counsel) for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a declaratory judgment finding defendant, Freeport Insurance Company, the primary insurer, and plaintiff, Fireman's Fund Indemnity Company, the excess insurer of Gail Saraniecki when a car she was driving was involved in an accident. The trial court, sitting without a jury, also held that it was Freeport's obligation to defend Gail Saraniecki in an action arising out of the accident, and that Freeport must reimburse Fireman's for any expenses incurred by the latter in defending Gail Saraniecki up to that time.

Fiore Angelico bought a car for his son to use. He turned the keys over to his son, who thereafter made general use of the car without requesting specific permission. They never discussed whether the son could let anyone else drive it. On the day of the accident, the son and some of his friends, including Gail Saraniecki, had driven the car to Lake Geneva, Wisconsin. Gail Saraniecki was driving the car on the way back at his request, so that he and a friend could rehearse a play during the ride, when the accident happened.

Fireman's had issued a policy of automobile liability insurance to Gail Saraniecki's father which covered Gail while driving an automobile not owned by him.

Freeport issued a policy of liability insurance on this car to Fiore Angelico as the "named insured", which provided coverage for "any other person using such automobile, provided the actual use thereof is with the permission of the named insured." Both policies obligated the companies to defend in any suits for injuries covered by the policies, and both provided that the respective companies were entitled to be subrogated to the rights of their insured in the event of any payments made under the policies. Each limited its liability in this situation, if any, to $50,000. The Fireman's policy admittedly covered Gail Saraniecki in this situation. Its policy also provides that "the insurance with respect to a non-owned automobile shall be excess insurance over any other valid and collectible insurance," so that, if Freeport also covered her, Freeport's coverage would be primary and Fireman's would be an excess insurer here.

A $100,000 suit was filed against Gail Saraniecki for injuries arising out of the accident. She notified Freeport, but it denied liability under the policy and refused to defend. She also notified Fireman's which has since been defending her in that action.

Basically two questions are raised by this appeal: (1) is Gail Saraniecki entitled to defense and coverage under the policy of insurance issued by Freeport Insurance Company; (2) is Freeport obligated to reimburse Fireman's for the costs and expenses incurred in defending Gail Saraniecki. The evidence is undisputed.

On appeal, Freeport argues that Gail Saraniecki had no permission from Fiore Angelico to drive this car, nor did his son have permission to let her drive, and that the "actual use thereof" was therefore not with the named insured's permission as is required under Freeport's "omnibus clause."

"Omnibus" clauses such as the one before us have been the subject of a great deal of litigation. The cases are usually regarded as falling into three general

72

groupings: (1) coverage exists only as long as there is strict compliance with the express permission and intended purposes of the owner; (2) coverage will exist as long as deviations from these purposes are minor; (3) once permission is granted, coverage exists in spite of any deviation from the original permission. Branch v. U. S. Fidelity & Guaranty Co., 198 F.2d 1007 (6 Cir.). Illinois has long belonged to the third group. Konrad v. Hartford Accident & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855; Landis for Use of Talley v. New Amsterdam Casualty Co., 347 Ill. App. 560, 107 N.E.2d 187; Jefson v. London Guarantee & Accident Co., Ltd., 293 Ill. App. 97, 11 N.E.2d 993; Karton v. New Amsterdam Casualty Co., 280 Ill. App. 201; Jackson v. Bankers Indemnity Ins. Co., 277 Ill. App. 140.

■ Whether permission exists in any given situation is primarily a question of fact. The pertinent evidence on this question is the testimony of the adverse witness, Fiore Angelico. He testified that he gave his son permission to use the car any time he wanted to "because I bought the car for him." The son had his own key to the car. The father also drove it sometimes and had keys too, but he had another car for his own use. He related that he never required his son to ask specific permission to use the car. He didn't know his son went to Lake Geneva until after the accident; he knew his son was dating Gail Saraniecki, but he never gave her permission to drive the car at any time; he never discussed with his son whether he could let anybody else drive the car. The trial court found that Gail Saraniecki drove the car with implied permission of Fiore Angelico.

■ ■ A finding on this question will not be disturbed on appeal unless clearly erroneous. Halmel for Use of Soukup v. Motor Vehicle Casualty Co., 272 Ill. App. 336, aff'd. sub nom. Soukup v. Halmel, 357 Ill. 576, 192 N. E. 557; Jackson v. Bankers Indemnity Ins.

73

Co., 277 Ill. App. 140; Branch v. U. S. Fidelity & Guaranty Co., 198 F.2d 1007 (6 Cir.). Permission will more readily be assumed when the general use is for social rather than business purposes, Jordan v. Shelby Mut. Plate Glass & Casualty Co., 51 F. Supp. 240 (W. D. Va.), aff'd. 142 F.2d 52 (4 Cir.), and it will more readily be assumed where the permittee has general custody of the car, rather than a limited permission. Branch v. U. S. Fidelity & Guaranty Co., supra.

In our case we have general custody under a social relationship, and the finding of the trial court that permission existed. Initial permission certainly existed, which alone would bring this situation within the coverage of the "omnibus" clause in this state. It is undisputed that Angelico gave his son the broadest sort of permission he could, which would satisfy the requirements even in jurisdictions where no deviation from the original permission is allowed. It is hard to see how he could deviate from this broad permission.

■ Freeport, however, contends that Fiore Angelico knew nothing of this particular trip or this particular driver, and thus could not be said to have permitted them. Freeport places much reliance on the term "actual use", and claims that it is used to eliminate the contention that permission need not cover the specific purpose for which the car was being driven, citing Laroche v. Farm Bureau Mutual Automobile Ins. Co., 7 A.2d 361 (Pa.); Maryland Cas. Co. v. Marshbank, 226 F.2d 637 (3 Cir.); and Johnson v. Maryland Casualty Co., 34 F. Supp. 870 (W. D. Wis.). However, these cases involve deviations from specific permitted uses, or a use that was expressly forbidden. In recent years, these omnibus clauses have included the term "actual use" rather than merely "use", and some cases, such as those cited by Freeport, have held that this is done to avoid the contention that once initial permission is found, coverage will be extended under an omnibus clause regardless of subsequent de-

74

viations from this permission. See also Gulla v. Reynolds, 81 N.E.2d 406 (Ohio App.). Other courts have ignored this distinction, however. Utica Mutual Ins. Co. v. Rollason, 246 F.2d 105 (4 Cir.); Vezolles v. Home Indemnity Co., 38 F. Supp. 455 (W. D. Ky.), aff'd 128 F.2d 257 (C. C. A. 6); Haeuser v. Aetna Casualty & Surety Co., 187 S. 684 (La. App.). "Actual use" was used in the policies involved in Konrad v. Hartford Accident & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855, and Muthart v. Burik, 327 Ill. App. 170, 63 N.E.2d 635, aff'd. 395 Ill. 182. Konrad applies a statutory omnibus clause, in which "actual use" does not appear, but the court there expresses the opinion that there is no difference between the statutory term "use" and the policy term "actual use." Muthart, while finding coverage lacking on other grounds, applies the initial permission rule in spite of the policy requirement of "actual use." We think there is no substantial difference between the two terms, but even if we were to adopt the view of the courts which find such a distinction, it would not influence the outcome in this case. The distinction is relevant where there is a deviation from a specific permission, and such is not the case here. What Freeport is here claiming, in effect, is that the term requires some more specific exercise of judgment and permission on the part of the named insured, and that the general permission granted the son is too broad to extend the policy coverage to this situation. We do not find any such connotation in the term "actual use", nor have we found any cases supporting this view. The son had the general use of the car with his father's permission, and this general permission includes the authority to delegate the driving to another while the permittee is using the car. Standard Accident Ins. Co. v. New Amsterdam Cas. Co., 249 F.2d 847 (7 Cir.); see also annotation, 160 A. L. R. 1195, at 1213.

75

■ Since Freeport's policy does cover Gail Sara-niecki and is therefore primary, we hold that Freeport is also primarily responsible for the defense of this suit. While it is true that Fireman's policy also obligates them to defend, we think the policy must be read as a whole, Fogelmark v. Western Casualty & Surety Co., 11 Ill.App.2d 551, 137 N.E.2d 879, and this obligation viewed in light of its position as an excess insurer in this particular situation. In American Surety Co. of N. Y. v. Canal Ins. Co., 258 F.2d 934 (4 Cir.), an excess insurer had investigated and defended a tort action against its insured after the primary insurer had been tendered the defense and had refused it, and the insured was held liable for an amount in excess of the primary insurance, which the excess insurer paid. In allowing the excess insurer to recover from the primary insurer the limits of the primary policy, as well as all costs, expenses, and attorney's fees incurred in the investigation and defense of the tort claim, the court stated: "Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape." We agree with this statement. The primary insurer has also been held primarily responsible for defending its insured in McFarland v. Chicago Exp., 200 F.2d 5 (7 Cir.); Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 105 N.E.2d 568 (Ohio); and Oil Base v. Transport Indemnity Co., 299 P.2d 952 (Cal. App.).

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

KILEY, P. J. and MURPHY J., concur.