Clayton Orrill, Plaintiff-Appellant, v. Jesse W. Garrett and C. L. Klepzig, Inc., a Corporation, Defendants, Employers Insurance of Wausau, a Corporation, and C. L. Klepzig, Inc., a Corporation, Defendants-Appellees.

Gen. No. 10,932.

Fourth District.

October 10, 1968.

Hutchens & Mann, of Winchester (Richard E. Mann, of counsel), and Foreman, Rammelkamp, Bradney & Hall, of Jacksonville (Robert E. Bradney, of counsel), for appellant.

Bellatti, Fay & Bellatti, of Jacksonville, for appellees.

SMITH, P. J.

Plaintiff was injured in person and property in a collision between his automobile and a truck driven by the defendant, Jesse W. Garrett, and owned by the defendant, C. L. Klepzig, Inc. In a bench trial, plaintiff recovered a judgment against Garrett, the operator, by default. On Count II of his complaint based upon the master-servant relationship between Garrett and Klepzig, the court found the issues in favor of the defendant Klepzig and entered judgment accordingly. We are not concerned with an appeal from either judgment. Employers Insurance of Wausau was the insurance carrier of Klepzig. A citation to discover assets was issued to determine whether or not Garrett came under the protective cloak of the omnibus clause in this insurance policy. The trial court dismissed the citation with a finding that Klepzig did not expressly or impliedly grant permission to Garrett to operate the truck at the time of the accident, that Garrett did not have a valid Illinois State Operator's license and that he did not come within the definition of

"insured" under the omnibus clause of Klepzig's public liability insurance policy issued by Employers. Plaintiff's motion for a rehearing and to vacate the order dismissing the citation was denied. This appeal is from the order dismissing the citation and the order denying the rehearing and refusing to vacate.

Klepzig was a manufacturer of staves and operated a mill along Highway 267 approximately three-fourths of a mile north of Murrayville in Morgan County. Garrett was an employee of the mill. Most of the employees were from Missouri and went home on the weekend. Others "batched" at the stave mill and occupied cabins or shacks built by the employer for that purpose. There was no water supply at the mill and water for the use of the employees and for those who remained in the cabins was obtained and brought to the mill in twenty-gallon containers by any *employee who happened* to be going to town at the time when a supply was required. On a hot Friday evening in July, everyone had left the mill for the weekend except Garrett. He found he was without water; took the truck and was enroute to obtain water when the accident occurred.

Prior to leaving on the evening in question, the general manager of Klepzig told Garrett that there was a prospective buyer coming to look at the truck in question, showed Garrett where the keys were and directed him to show the keys to the prospective buyer if he came. Garrett testified that he also said "you won't be going nowheres with it, will you?" and I said, "No, sir, I don't drive." He further testified that he had never driven any of the Klepzig trucks, had never been asked to drive one, did not drive one in the course of his usual employment, and that no one had ever told him not to drive any of the trucks nor had ever asked him to drive one.

The policy in question provided protection to

> "any person while using an owned automobile—and any person . . . legally responsible for the use

196

thereof, provided the actual use of the automobile is by the named insured or with his permission."

For Garrett to become an additional insured under the omnibus clause of this policy, it is incumbent upon the plaintiff to establish by the preponderance of the evidence that Garrett's "use" of the vehicle was with the express or implied permission of Klepzig. Hays v. Country Mut. Ins. Co., 28 Ill2d 601, 192 NE2d 855. It is Employers' position in support of the trial court's judgment that Garrett had no permission either express or implied to use the vehicle. It is plaintiff's position that in order for Garrett to carry out the directions of his employer to show the keys to the prospective purchaser, it would be necessary for him to open the door and get the keys and thus use the vehicle. Plaintiff's position is thus predicated upon the proposition that in order to carry out his instructions, Garrett was required to use the truck by opening the door and getting the keys. Garrett testified that his instructions were to show the prospective buyer where the keys were. They were out of sight in the ash tray, under the seat or under the mat—the evidence is not too clear on this point. In any event, there isn't a single word of testimony that indicates that Garrett was required to deliver the keys to the prospective buyer. The mission assigned to him might well have been as effectively carried out by word of mouth without ever touching the truck. In short, to carry out the instructions of Klepzig, Garrett was not required to use the truck in any sense of the word much less operate it.

■ We should here observe that the word "use" is much broader than the term "operate" or "drive." One who operates a motor vehicle obviously uses it, but one can use a motor vehicle without operating it. An automobile is being used, for example, by one riding in it although another is driving or operating it. 45 CJS, Insurance, § 829, p 902; General Accident Fire & Life Assur. Corp. v. Brown, 35 Ill App2d 43, 181 NE2d 191; Visintin v.

Country Mut. Ins. Co., 78 Ill App2d 75, 222 NE2d 550; Indemnity Ins. Co. of North America v. Metropolitan Cas. Ins. Co. of New York, 33 NJ 507, 166 A2d 355.

▉▉ Orrill urges that being without water, Garrett was confronted with an emergency and that there was an implied permission to use the truck to go after water. Implied permission involves an inference or circumstances arising from a course of conduct or relationship between the parties in which there is a mutual acquiescence or lack of objection under circumstances signifying permission. An implied permission is not, therefore, confined alone to affirmative action. See 5 ALR2d, ¶ 7, p 609. The facts in this record tend to negate rather than to affirm an inferential or permissive use of the truck. Klepzig's manager testified concerning the keys that generally they "put 'em in the office or somewheres, just put 'em in my pocket and take 'em. They were always out of the truck on weekends." The usual practice, therefore, negates any thought that there was an implied permission to anyone staying over the weekend at the mill to use the truck. The keys were left in this truck for a limited and a specific purpose and Garrett's direction was to *show* the prospective purchaser where the keys were, not to *deliver* them. Klepzig's manager's statement to Garrett that "you won't be going nowheres, will you?" was construed by Garrett to refer to the operation of the truck when he replied, "No, sir, I don't drive." Garrett had no driver's license. It would seem unreasonable to conclude from these circumstances that Garrett had any reason to believe that he had implied permission to use the truck. We assume there was an implied permission for Garrett to use the truck by leaning against it if he were tired or rest his foot on the bumper while he tied his shoe. It is submitted that such use does not mushroom into a permission to operate the truck. Neither the past conduct of the party nor the circum-

stances raise a reasonable implication that there was a tacit permission to use the truck. The shack was only three-quarters of a mile from town. The record is silent as to whether there was a telephone available or other habitations within reasonable walking distance. The trial court found that the master-servant relationship did not exist at the time of these occurrences. The record is clear that these shacks were available for the people if they cared to use them and otherwise they were on their own. Under these circumstances, the plaintiff has failed to establish by the preponderance of the evidence that Garrett was given permission either express or implied to use the vehicle. The facts in this case fall far short of reasonably supporting a conclusion that Garrett had permission either to operate or use this truck. Accordingly, the judgment of the trial court that Garrett was not insured under the omnibus clause of this policy is correct and it should be and it is hereby affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.