STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellant, v. SPRINGFIELD FIRE AND CASUALTY COMPANY *et al.*, Defendants-Appellees.

Fourth District   No. 4—08—0977

Opinion filed September 30, 2009.

Robert Marc Chemers (argued) and Heather E. Plunkett, both of Pretzel & Stouffer Chtrd., of Chicago, and Bianca T. Green, of Thomas, Mamer & Haughey, LLP, of Champaign, for appellant.

John R. Keith (argued), of Keith Law Offices, of Springfield, for appellee Springfield Fire & Casualty Company.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 2007, plaintiff, State Auto Property & Casualty Insurance Company (State Auto), brought this action for declaratory judg-

ment against defendant Springfield Fire & Casualty Company (Springfield Fire). These insurers do not question whether both companies' insured, Swearingen Brothers, Inc. (Swearingen Brothers), is liable for the injury to one of its contractors and the death of another. Instead, State Auto has asked this court to determine whether Swearingen Brothers had the right to "deselect" Springfield Fire from coverage and "target" State Auto as the sole defender and indemnifier of the contractors' claims. For the reasons that follow, we conclude that (1) Swearingen Brothers could properly "deselect" its Springfield Fire coverage and (2) State Auto's claims about the need to be "targeted" are groundless.

## I. BACKGROUND

In August 2003, Swearingen Brothers, a construction company, obtained an insurance policy from State Auto that provided general commercial liability coverage. This insurance policy included the following "other-insurance" provision:

> "If other valid or collectable insurance is available to the insured for a loss [State Auto] cover[s] *** [State Auto's] obligations are limited as follows:
>
> > a. Primary Insurance
> >
> > This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, [State Auto] will share all that other insurance by the method described in c. below.
> >
> > b. Excess Insurance
> >
> > This insurance is excess over:
> >
> > (1) Any other insurance, whether primary, excess, contingent or on any other basis:
> >
> > > (a) That is [f]ire, [e]xtended [c]overage, [b]uilder's [r]isk, [i]nstallation [r]isk or similar coverage to 'your work[.]' "

In March 2004, Swearingen Brothers obtained additional insurance coverage from Springfield Fire specifically for Swearingen Brothers' "Montgomery Building Project."

In April 2004, Matthew Swearingen was injured and Wayne Boruff was killed while attempting to demolish a building in furtherance of the Montgomery project. Thereafter, Swearingen's and Boruff's estates sued Swearingen Brothers to recover for their respective injuries and death.

In May 2008, State Auto filed a second amended complaint for declaratory judgment, seeking, in part, to have its coverage, if implicated at all, deemed excess to that of the general coverage

provided by Springfield Fire, citing the aforementioned "other-insurance" provision. In June 2008, Springfield Fire responded by filing a motion to dismiss that portion of State Auto's motion for declaratory judgment pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)). Specifically, Springfield Fire asserted that in November 2007 and February 2008, Swearingen Brothers had, by letter, deselected Springfield Fire from providing any insurance coverage or indemnification relating to the injuries and death at the Montgomery project. Following a September 2008 hearing, the trial court granted Springfield Fire's motion to dismiss. Specifically, the court, citing *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 727 N.E.2d 211 (2000), found that Swearingen Brothers had properly deselected Springfield Fire's insurance coverage in favor of State Auto's insurance coverage.

This appeal followed.

## II. ANALYSIS

State Auto argues that (1) the trial court erred by finding that Swearingen Brothers properly deselected Springfield Fire's insurance coverage in favor of State Auto's insurance coverage and, alternatively, (2) even if Swearingen Brothers properly deselected the Springfield Fire coverage, it failed to make a "targeted tender" to State Auto, thereby allowing State Auto to seek equitable contribution from Springfield Fire. We address State Auto's contentions in turn.

### A. State Auto's Claim That the Trial Court Erred by Finding That Swearingen Brothers Had Deselected Springfield Fire's Coverage

State Auto contends that the trial court erred by finding that Swearingen Brothers properly deselected Springfield Fire's insurance coverage in favor of State Auto's coverage. Specifically, State Auto asserts that the line of Illinois cases holding that a party may deselect insurance coverage from one insurance provider in favor of another is distinguishable because those cases involved situations in which an insured was covered as the named insured on one policy and as an additional insured on the other. Thus, State Auto claims, the right to deselect coverage arises only out of the bargained-for exchange of prearranged contractual risk shifting—that is, the right to deselect must be agreed upon by contract, rather than "through the beneficence of a court[-]sponsored doctrine." Essentially, State Auto posits that the "other-insurance" provision in its policy governs because other insurance was "available." We disagree.

### 1. *The Standard of Review*

We review *de novo* the trial court's decision to dismiss a claim pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West

2006)). *Kolacki v. Verink*, 384 Ill. App. 3d 674, 677, 893 N.E.2d 717, 721 (2008). "In conducting that review, the reviewing court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party." *Kolacki*, 384 Ill. App. 3d at 677, 893 N.E.2d at 721-22.

### 2. *The Supreme Court's Decision in John Burns*

In *John Burns*, the supreme court addressed the same question that is now before this court—namely, "whether an insurer to whom litigation is tendered and whose policy contains an 'other[-]insurance' clause *** may seek contribution from another insurer whose policy is in existence but whose coverage the insured has refused to invoke." *John Burns*, 189 Ill. 2d at 573-74, 727 N.E.2d at 214. In *John Burns*, Burns Construction Company (Burns) entered into a subcontract with Sal Barba Asphalt Paving, Inc. (Barba), to pave a parking lot. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. The parties' agreement required Barba to maintain insurance in Burns' name. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. Thereafter, Burns was added to Barba's Indiana Insurance Company policy. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. However, Burns was also insured through its own policy with Royal Insurance Company. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. Thus, Burns was covered by, and named in, two insurance policies: its own, issued by Royal, and Barba's, issued by Indiana. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213.

Shortly after Barba completed paving the parking lot, a pedestrian slipped and fell in the lot. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. The pedestrian subsequently sued Burns. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. In response, Burns deselected its policy with Royal and filed a claim with Indiana to defend and indemnify the claim. *John Burns*, 189 Ill. 2d at 571, 727 N.E.2d at 213. Indiana responded that Barba's policy—in which Burns was a named insured—contemplated, under its "other-insurance" provision, that more than one insurer might face exposure, and therefore its policy provided a formula for sharing the costs of defending and indemnifying such claims. *John Burns*, 189 Ill. 2d at 572, 727 N.E.2d at 213-14.

The supreme court agreed with Burns and Royal, noting that the "other-insurance" clause in Indiana's policy—which we note is strikingly similar to the "other-insurance" provision in this case—did not limit Burns' right to select which insurer would be required to indemnify its claims. *John Burns*, 189 Ill. 2d at 576, 727 N.E.2d at 216. Indiana attempted to distinguish the line of case law that allowed an insured to designate which insurance company would defend the insured's claim by noting that in those cases the policy issued did not

contain an "other-insurance" clause. *John Burns*, 189 Ill. 2d at 576, 727 N.E.2d at 216. The supreme court disagreed, noting that the purpose of an "other-insurance" clause is not to trigger coverage; rather, it is to provide a method of apportioning coverage that is otherwise triggered. *John Burns*, 189 Ill. 2d at 576, 727 N.E.2d at 216. In other words, the issue of liability under the "other-insurance" clause did not arise because the other policy was never invoked.

The supreme court concluded that (1) the Royal insurance policy was not "available," in the language of Indiana's policy, because Burns had declined to invoke that coverage and (2) Indiana's "other-insurance" provision could not "itself overcome the right of an insured to tender defense of an action to one insurer alone." *John Burns*, 189 Ill. 2d at 578, 727 N.E.2d at 217.

Nearly five years later, this court reached a different result on similar facts due to a significant nuance in *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 357 Ill. App. 3d 891, 830 N.E.2d 10 (2005).

### 3. *This Court's Decision in Pekin Insurance*

In *Pekin Insurance*, 357 Ill. App. 3d at 893, 830 N.E.2d at 12, a van owned by Sanfilippo and Sons, Inc. (van owner), and insured by Fidelity and Guaranty Insurance Company, broke down. The van's driver called Brown's Vehicle Inspection (tow-truck owner) to have the van towed. *Pekin Insurance*, 357 Ill. App. 3d at 894, 830 N.E.2d at 13. The tow-truck owner sent a tow truck, which was insured by Pekin Insurance Company. *Pekin Insurance*, 357 Ill. App. 3d at 894, 830 N.E.2d at 13. While the van was being towed, it broke free, crossed into oncoming traffic, and injured two people. *Pekin Insurance*, 357 Ill. App. 3d at 894, 830 N.E.2d at 13. The injured parties sued, in pertinent part, the tow-truck owner and the van owner. *Pekin Insurance*, 357 Ill. App. 3d at 894, 830 N.E.2d at 13.

The tow-truck owner was the named insured on the Pekin insurance policy, and the van owner was the named insured on the Fidelity insurance policy (which was also an omnibus policy—that is, the policy covered individuals who used the van with the named insured's permission). *Pekin Insurance*, 357 Ill. App. 3d at 894-95, 830 N.E.2d at 13. Nevertheless, once the lawsuit commenced, the tow-truck owner attempted to deselect its Pekin coverage and target the van owner's Fidelity coverage. *Pekin Insurance*, 357 Ill. App. 3d at 895, 830 N.E.2d at 13. The trial court rejected the tow-truck owner's attempt to deselect its coverage and later granted Fidelity judgment on the pleadings. *Pekin Insurance*, 357 Ill. App. 3d at 895, 830 N.E.2d at 13-14.

On appeal, this court concluded that the tow-truck owner could not deselect its Pekin policy and target the van owner's Fidelity policy. *Pekin Insurance*, 357 Ill. App. 3d at 902, 830 N.E.2d at 19. In so concluding, this court distinguished the supreme court's decision in *John Burns*, noting that in that case the insurance policies each named the party seeking to deselect coverage. *Pekin Insurance*, 357 Ill. App. 3d at 902, 830 N.E.2d at 19. We also emphasized that because the tow-truck owner was not *named* in the Fidelity policy, but merely covered under the omnibus provision of that policy, it would be improper to allow the tow-truck owner to deselect its coverage in favor of the Fidelity policy, a policy that it had not previously negotiated to be covered by. *Pekin Insurance*, 357 Ill. App. 3d at 902, 830 N.E.2d at 19.

### 4. *The Significance of Being a Named Insured*

Whether an individual is a named insured is significant because the rationale for allowing an insured to deselect coverage is that it vests the named insured with the right to choose between two policies for which that named insured has (1) paid the premium or, (2) as in *John Burns*, negotiated for the contracted right to be named on another's policy. See *John Burns*, 189 Ill. 2d at 577-78, 727 N.E.2d at 216-17 (concluding that the named insured—rather than the insurance company—controls which of its insurance policies will be triggered). In contrast, when a party has only contracted with, and paid the premium for, one policy and attempts to deselect its policy in favor of a policy on which it has not paid the premium or negotiated to be the named insured, this rationale is inapplicable.

While initially it may appear that deselecting additional insurance coverage would be unwise in the face of a personal injury or wrongful-death lawsuit, a named insured may wish to do so for any number of reasons, including, but not limited to, the following: (1) fear of the risk of being dropped from coverage, (2) endeavoring to limit increases in its premiums, and (3) ensuring stability in coverage during a pending lawsuit.

### 5. *Deselection in This Case*

As in *John Burns*, in this case, Swearingen Brothers was the named insured on both the State Auto and Springfield Fire policies. Indeed, it paid the premiums on both policies. Therefore, Swearingen Brothers had the right to deselect its coverage under the Springfield Fire policy in favor of its coverage under the State Auto policy.

Moreover, State Auto's "other-insurance" provision does not supercede Swearingen Brothers' right to deselect coverage because Swearingen Brothers never triggered its Springfield Fire policy. By not invoking its coverage under the Springfield Fire policy, Swearingen

Brothers left itself with coverage through only its State Auto policy. Thus, no other insurance was "available," as that term is used in the State Auto policy. Accordingly, State Auto may not take advantage of its "other-insurance" provision. See *John Burns*, 189 Ill. 2d at 578, 727 N.E.2d at 217 ("An 'other[-]insurance' provision does not in itself overcome the right of an insured to tender defense of an action to one insurer alone").

B. State Auto's Claim That Swearingen Brothers Did Not Properly Target State Auto as the Exclusive Defender and Indemnifier

■ Alternatively, State Auto argues that even if the trial court did not err by finding that Swearingen Brothers deselected its Springfield Fire policy, the court erred by finding that the act of deselection automatically resulted in a targeted tender. Specifically, State Auto contends that Swearingen Brothers was required to send State Auto a "targeted tender" or "selective tender" letter, notifying State Auto that it was looking solely to State Auto to defend and indemnify the claims in this case. To that end, State Auto asserts that "there is nothing in the [r]ecord to indicate that Swearingen Brothers is looking solely to State Auto for exclusive coverage." We disagree.

In support of its argument, State Auto relies solely on the supreme court's decision in *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 821 N.E.2d 269 (2004). Although *Home Insurance Co.* stands for the proposition that a distinction exists between equitable contribution and equitable subrogation (*Home Insurance Co.*, 213 Ill. 2d at 323, 821 N.E.2d at 280), such a distinction is not significant in this case because, as previously discussed, Swearingen Brothers never invoked its Springfield Fire policy. See *People v. Flatt*, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980) ("It is well settled that the precedential scope of a decision is limited to the facts before the court"). Because Swearingen Brothers never triggered the Springfield Fire policy, the issue of whether equitable contribution or equitable subrogation was appropriate is inconsequential. See *Home Insurance Co.*, 213 Ill. 2d at 310, 821 N.E.2d at 273 (resolving the contribution-subrogation issue where both insurance policies had been invoked).

Here, State Auto's claim that Swearingen Brothers had to specifically inform State Auto that it was looking *solely* to State Auto to defend and indemnify the claims is not relevant because Swearingen Brothers was required only to file its claim for coverage with State Auto, which it did. State Auto's brief does not explain how receiving a letter with certain "magic words" would have better notified it that Swearingen Brothers intended to have State Auto defend and

indemnify the claims than filing its initial claim did. Our view is that State Auto's brief did not explain how such a "targeted tender" letter would have better asserted Swearingen Brothers' intent because such a letter would not have.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and APPLETON, JJ., concur.